## JINDRA v. UNITED STATES.*
### No. 7150.

Circuit Court of Appeals, Fifth Circuit.
March 5, 1934.

Bart A. Riley and J. Aaron Abbott, both of Miami, Fla., for appellant.

John W. Holland, U. S. Atty., and Wm. A. Paisley, Asst. U. S. Atty., both of Jacksonville, Fla., for the United States.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, Valdimir K. Jindra, appeals from a conviction on a count charging him with facilitating the sale of unlaw-

*Rehearing denied April 12, 1934.

fully imported narcotics. The count was demurred to, a bill of particulars furnished, and the demurrer overruled. The bill of particulars rendered unimportant any want of detail in the allegations. In substance, the count charged that Jindra and others had unlawfully, feloniously, fraudulently, and knowingly received, concealed, bought, and sold, and facilitated the transportation, concealment, and sale of described narcotic drugs, being gum opium and morphine and cocaine, which had theretofore and subsequently to July 1, 1913, been by persons unknown imported into the United States contrary to the law and to the Act of Congress approved May 26, 1922, commonly called the Narcotic Drugs Import and Export Act (42 Stat. 596), and not under any regulation prescribed by the Federal Narcotics Control Board, "all of which the said defendants then and there well knew." The concluding words sufficiently charge that the defendants knew the drugs to have been imported contrary to law, a necessary element of guilt under the statute. 21 USCA § 174. The fact of importation contrary to law was alleged immediately prior to the sweeping words "all of which," and was included in them. The allegation that the importation was not under any regulation prescribed by the control board may be treated as surplusage. The statute defining the crime, section 174, makes no reference to any board. It is true that section 173 which regulates the importation of the drugs mentioned provides as an exception that certain crude opium and coca leaves may be imported under regulations to be prescribed by the board, but if a defendant claims that the drugs with which he is concerned came in under such a license, he ought to show it. The contention is that the control board has been abolished since July 1, 1930, 5 USCA § 282b (a), but nevertheless its regulations survive until changed, section 282b (e). The allegation under discussion does no harm. The latitude in the allegation touching the date of importation, from July 1, 1913, to June 10, 1931, was cured, if cure be needed, by the bill of particulars which fixed the date at April 28, 1931. There is no reversible error touching the demurrers.

 Jindra was previously tried on this and on three other counts which alleged violations of the Harrison Narcotic Law (26 USCA §§ 211, 691 et seq.) in respect to the same narcotics. He was then convicted on the first and acquitted on the other counts. Having obtained a new trial on the first count, he pleaded in bar this acquittal on the other counts, offering to prove that they related to the same transactions. It is plain that in order to convict on the first count unlawful importation must be shown, while the facts about an original stamped package and the absence of order forms which are vital to the other counts are immaterial to the first. The counts charge different offenses and require different proofs to sustain them. Corollo v. Dutton, Marshal (C. C. A.) 63 F.(2d) 7. An acquittal of one is not a bar to prosecution for the other under the Federal Constitution (Amendment 5). Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489.

 A motion to direct a verdict of not guilty was properly denied. It was proved without contradiction that the narcotic drugs, 12 ounces of cocaine, 6 ounces of morphine, and 9 ounces of gum opium, were unlawfully imported by boat into the port of Miami; that a list of them, naming a price of $250, was given by one of the accomplices to his wife, she being a patient of Jindra who was a practicing physician, to ask him if he could use them. She gave him the list, saying it was a little message from a friend who worked on a boat. Jindra said he had no money then, but could use the narcotics later, that he could use the morphine and cocaine but not the opium unless he could find a Chinaman that could use it; that he would send a party in a few days to see her friend, with a card having Jindra's name on it. She brought Jindra a sample of the opium which he said was the pure stuff. A few days later one Hammer, who desired to obtain employment with the United States and was in touch with the narcotics inspectors, but was under no specific directions from them, approached Jindra whom he had known previously, and asked Jindra if he knew about any narcotics which Hammer could sell. Jindra said he had none, but could put him in touch with some which a woman had for sale and gave him the above-mentioned list. Jindra gave him a card with Jindra's name on it and the name and address of the woman. Jindra also called the woman by telephone. Hammer then went to the narcotic officers and advised them of the impending sale and they furnished him with money and arranged to arrest the woman and her husband and to seize the narcotics after Hammer bought them. The defense sought to impeach the government witnesses for bad character, but made no contradiction of their

evidence. Jindra did not take the stand. Clearly a case was made for the jury, unless on the essential point of Jindra's knowing that the narcotics which he was helping to sell were unlawfully imported. While he had nothing to do with the importation and no possession of the drugs, we think the circumstances without the aid of the presumption which arises on possession would warrant the conclusion that he knew. He was a physician and necessarily informed how such drugs must be legally bought and sold. The amount and price and kinds of them and the circumstances of their offer to him cried aloud that they were in some way contraband. He lived at the port of Miami where illegal imports of such drugs are notorious, and he was informed that a man who worked on a boat was selling them. The inference that they were smuggled is almost unescapable. He offered no evidence to show any other belief about them. Absolute and certain knowledge need not be shown, any more than in a case of receiving stolen property knowing it to be stolen.

█ The assignments of error relating to rulings on evidence do not set the evidence forth, and present no question for decision. Rule XI of this court. Those complaining of refusals to charge cannot be considered for a like reason, and because no exception was timely made. Harbour v. United States (C. C. A.) 54 F.(2d) 1. A full and valid exception states that the court was requested to tell the jury that it was "possible to legally import such drugs as were described in the indictment, that is, persons can have legal possession of them in this country." The court thereupon charged: "Yes, gentlemen, under circumstances, which in the opinion of the Court are not in issue here, it is lawful to import narcotic drugs." Exception was taken, but no further charge asked. The charge given was abstractly correct. There was no evidence or claim that the drugs were lawfully imported. The fact that lawful import was possible was stated. We cannot hold the charge to be error.

█ Hammer testified positively that when he approached Jindra about narcotics he was not acting for the government officers nor under their instructions. Jindra's counsel contended that the circumstances showed the contrary, and justified a charge on so-called entrapment. The court charged: "The defense of entrapment has been urged in this case. You are charged that while officers of the law have a right and it is their duty to test out persons that they have reasonable grounds to believe are engaged in the violation of law, but no officer of the law has a right to go out and entice, persuade or induce a person who is otherwise innocent to engage in the commission of a crime just for the purpose of apprehending him and convicting him. It would be intolerable if officers of the law were permitted to engage in any such conduct, but the Court is not aware of any rule of law which would extend that doctrine to a private citizen who is not an officer of the law." Exception was taken because "the testimony reveals an agency for the Government." The agency was not, however, a proven fact. The charge was abstractly correct. Newman v. United States (C. C. A.) 28 F.(2d) 681; Polski v. United States (C. C. A.) 33 F.(2d) 686; Beard v. United States (C. C. A.) 59 F.(2d) 940. If appellant desired a more exact application of the law to one acting for an officer in case the jury, notwithstanding Hammer's testimony should think that to be the true fact, a proper request adapted to the situation should have been submitted and, if refused, an exception taken. Several requests were made to charge on this subject, but they were all properly declined because they sought to apply the defense of entrapment to Hammer's conduct irrespective of whether he was at the time representing the officers. No exception was taken to their refusal.

█ The court in charging that one who aids, assists, counsels, or procures the commission of a crime is guilty along with the actual perpetrator used the expression "to a material extent." Exception was taken because the jury must be convinced beyond a reasonable doubt of guilt. The court having already charged as to reasonable doubt, said: "I will let the charge stand, but I will again charge the jury that the defendant is also presumed to be innocent unless in your opinion the evidence shows his guilt of the offense beyond a reasonable doubt." We perceive no error in adding to the statutory words making accessories to be principals the qualification "to a material extent." The qualification is in favor of the defendant, and excludes trivial or immaterial participation. No other assignments seem to us to require discussion. They are without merit.

Judgment affirmed.