**Richard T. COOK, Jr. and Vernon C. Hill, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 16898.

United States Court of Appeals
Fifth Circuit.

April 30, 1958.

Julian Hartridge, Savannah, Ga., for appellants.

Donald H. Fraser, Asst. U. S. Atty., Savannah, Ga., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

PER CURIAM.

On oral argument for the first time, appellants urged that it was error per se for the trial court to elicit information

from the jury as to its numerical standing. In the district court the two appellants were tried and convicted of rape in violation of 18 U.S.C. § 2031. The jury had retired at 12:10 P.M. on Wednesday, May 15, 1957. At 2:40 P.M. they returned to inquire whether they could bring in a verdict with a recommendation of mercy. At 5:10 P.M. they again returned to ask whether, if they made a recommendation, they could suggest a length of imprisonment. At 5:40 P.M. (still the same afternoon) the foreman reported that the jurors believed that they were hopelessly deadlocked. At 10:00 A.M. the next morning, they returned to the courtroom and what occurred is set forth in the margin.[1]

1. "Gentlemen of the Jury, have you all agreed upon a verdict in this case.

"The foreman:

"No, sir. We worked until 11:00 o'clock last night and another hour this morning, and we believe we are closer than we have been at any time.

"The Court:

"Let me ask you something: I am not asking you which way you stand, but how do you stand with respect to numbers? Is it 7 to 5, 6 to 8, 8 to 4, or 11 to 1?

"The Foreman:

"We haven't taken a count this morning.

"The Court:

"What was your last count? How was it last night? How did you stand at that time? Not whether it was for a conviction or an acquittal, but how did you stand in respect to numbers?

"The Foreman:

"We haven't taken a count this morning.

"The Court:

"Well, what was it last night. How did you stand last night with respect to numbers, not for conviction or acquittal, but how did you stand as to numbers?

"The Foreman:

"We were 7 to 5 on the last actual count.

"The Court:

"Is that your last count?

"The Foreman:

"That was last night. We are closer than that now.

"The Court:

"Well, how close are you, Mr. Foreman? I keep asking you. What was your last ballot.

"The Foreman:

"The last ballot was 7 to 5, but there has been some changes.

"The Court:

"But what was the last change, Mr. Foreman. How does the jury stand now, 10 to 2 or 11 to 1, or what?

"The Foreman:

"We do not have a count on that now.

"The Court:

"Well, I am sorry. You are the first Foreman I have seen in my twelve years who couldn't tell me how the jury stood. But that's all right, if you don't know. It's all right with me. I want to just give you a brief charge. Just have a seat.

\* \* \* \* \*

"I charge you that it is your duty, gentlemen of the jury, to agree on a verdict in this case, if you possibly can. The case has been fully and completely tried. You are just as competent as any jury would be in disposing of it. It is no credit to a juror to stand out in a pure spirit of stubbornness because he has taken a position. It is the duty of every juror to consult with every other juror and reach a mutual understanding in this case. The Court does not mean to say that a juror is to give up an abiding conviction in the matter but it is your duty to reconcile such differences if any exist, and it is possible to do so if you follow the principles of law given you by the Court you ought not to have any trouble in agreeing on a verdict.

"Now, I didn't mean to make a facetious remark. I am not criticizing you, but I want you to send home and get your clothes. I know you need shirts and I know you need razors and I want you to send home and get them. Now, how many of you all live out of Savannah? (Jurors indicate by holding up hands.) Now, you give the Marshal your name and your address and he will send and get your shirts and whatever underclothes you need and your razors, so you can make yourself comfortable. Now, I am not going off and leave you all. I am going home Friday afternoon. If you all do not reach a verdict by that time you can call me on Saturday at Brunswick, if you reach a verdict on Saturday. I will be back here Sunday afternoon. I am not trying to threaten you. I am giving you exactly what the Court is going to do. I want you to get your clothes now. I want you to get your shirts, get your razors and whatever you need from home. The Marshal will get them for you. Now, that's all. You can go to your room, and resume your deliberations.

 The objection to the charge did not particularize the asking of the questions regarding the numerical standing of the jury. It is well settled, however, that an appellate court may notice plain errors of its own motion. Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. The mere asking of the question requiring an answer as to the standing of the jury, even though no inquiry is made nor answer given as to whether the majority is for acquittal or conviction, is error per se.[2] In this case that error was aggravated by the suggestion

"Note: At this point the jury retired to the jury room and the following exceptions and rulings of the Court were made out of the presence and hearing of the jury.

"Mr. Hartridge:

"We take exceptions to that last charge of the Court.

\* \* \* \* \*

"Mr. Hartridge:

"We except to it upon the grounds that it naturally tends to compel, force and induce a juror to reach a conclusion in which he was not conscientious.

\* \* \* \* \*

"Note: The jury was then returned to the jury box and the additional instructions were given.

"The Court:

"Gentlemen: I didn't mean just now to try to intimidate you in any way whatever by telling you what I proposed to do. I know if I was locked up in a room I would want to know just what the Court had in mind, and all that I said about you getting your clothes and your razors and things was not intended to intimidate you in any way whatever, or anything else that I might have said, because the question before you is to determine the guilt or innocence of these defendants. As I said two or three times on yesterday, it is your duty, under your oath as jurors, to find whether or not the government has carried the burden of proof beyond a reasonable doubt. What you are to do is to find the truth of this case. If you do not believe the government has carried the burden of proof beyond a reasonable doubt it would be equally your duty to acquit the defendants, but if you believe that the government has carried the burden of proof beyond a reasonable doubt, then it would be your duty to convict the defendants. The Court is expressing no opinion whatever. Whenever I said I wanted you to get your shirts and things that was for your comfort and not in any way to try to intimidate you by telling you how long I was going to keep you out there, or by my stating I was going home on Friday and coming back on Sunday. Of course, you can reach your verdict at any time you so desire. I just thought I would tell you that, but I do not want you to think for one minute that I was trying to intimidate you. Thank you so much. You may retire and resume your deliberations."

2. This question was settled in Brasfield v. United States, 1926, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. It was first noticed by the Supreme Court in Burton v. United States, 1904, 196 U.S. 283, 307, 25 S.Ct. 243, 249, 49 L.Ed. 482. In that case, in which Senator Joseph R. Burton of Kansas was being tried on a criminal charge, the jury retired on Saturday evening at 8 o'clock and had not reached agreement by 10 o'clock the following Monday morning. The jury was returned to the court to receive further instructions, and during the proceedings the court stated:

" \* \* \* I would like to ask the foreman of the jury how you are divided. I do not want to know how many stand for conviction, or how many for acquittal, but to know the number who stand the one way and the number who stand another way. I would like the statement from the foreman.

"The Foreman: Eleven to one." (196 U.S. at page 305, 25 S.Ct. at page 250)

That particular exchange was not excepted to. On appeal the case was reversed for failure of the court to give certain charges requested by the defense.

After deciding that the case should be reversed, the court continued its opinion as follows:

"We must say in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration

that the jury might be held together through Thursday, Friday, Saturday and Sunday. In our system of criminal juris-

prudence the duties and responsibilities assigned to the jury are as necessary and important as are those assigned to

of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain." (196 U.S. at pages 307–308, 25 S.Ct. at page 250.)

Almost immediately thereafter, the Eighth Circuit expressly followed this doctrine of the Burton Case in St. Louis & S. F. R. Co. v. Bishard, 8 Cir., 1906, 147 F. 496, and continued to follow it in Stewart v. U. S., 8 Cir., 1924, 300 F. 769, 782; in Nigro v. U. S., 8 Cir., 1925, 4 F.2d 781, 785; and in Weiderman v. U. S., 8 Cir., 1926, 10 F.2d 745, 746, to the effect that merely asking the question and eliciting the answer constituted reversible error.

As to the Fifth Circuit, prior to Brasfield v. U. S., supra, see Bernal v. U. S., 1917, 241 F. 339, 342, in which the question was asked and answered, but Judge Foster stated: " * * * there is no plain error which the court may notice of its own motion * * *."

In the meantime, the Ninth Circuit noted the Burton Case in Quong Duck v. United States, 9 Cir., 1923, 293 F. 563, 564, but stated in its opinion that it was not prejudicial error to ask the question, provided the jury was not required to reveal whether the majority was for conviction or acquittal. In Quong Duck the conviction was reversed on another matter. Two years later, however, the question was again presented and the Ninth Circuit followed its dictum as set out in Quong Duck, and affirmed a conviction in Brasfield v. U. S., 9 Cir., 1925, 8 F.2d 472.

Certiorari was granted, Brasfield v. U. S., 269 U.S. 550, 46 S.Ct. 201, 70 L. Ed. 407, and Mr. Justice Stone delivered the opinion for the Court. He reviewed the dictum of Burton v. U. S., supra, and noted the diversity of views between the Eighth Circuit on the one hand and the Ninth and Fifth Circuits on the other. He then proceeded to state:

"We deem it essential to the fair and impartial conduct of the trial, *that the inquiry itself should be regarded as ground for reversal.* Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances

which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned." (Emphasis added.)

Brasfield v. U. S., supra, 272 U.S. at page 450, 47 S.Ct. at page 135. Thereafter, the Ninth Circuit has expressly followed Brasfield v. U. S. in Jordan v. U. S., 9 Cir., 1927, 22 F.2d 966, and Spaugh v. U. S., 9 Cir., 1935, 77 F.2d 720, 722.

We are unaware of any case in which the Fifth Circuit has reversed a conviction solely on the basis of the Brasfield case, but as early as 1931 Judge Sibley revealed that this Court was aware of the fact that the question had been decided. He stated:

" * * * Because of the imputation of stubbornness, or worse, which is likely to arise if the numerical division of the jury is publicly revealed, *to require disclosure of it is held error per se in the courts of the United States.* Brasfield v. United States, 272 U.S. 448, 47 S. Ct. 135, 71 L.Ed. 345. Much more serious is an imputation by the judge that some of the jurors are forgetting their oaths." (Emphasis added.)

Kesley v. United States, 5 Cir., 1931, 47 F.2d 453, 454.

In Brasfield, as in the two cases decided by us today, the error of the trial judge was not called to his attention during the trial. Mr. Justice Stone pointed out that, where paramount considerations are involved and plain error has been committed, the failure of counsel to particularize an exception will not preclude the appellate court from correcting the error. That holding has been followed by the Supreme Court in New York Central R. Co. v. Johnson, 1929, 279 U.S. 310, 318–319, 49 S.Ct. 300, 73 L.Ed. 706, in United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555, and in many cases in the circuit courts, and Rule 52(b) of Federal Rules of Criminal Procedure, 18 U.S.C.A. has continued the same practice.

the judge. Within its prerogative, the jury must remain as free from any possible influence or coercion, even though unintended, as the trial judge would require that he himself be when sitting as a trier of fact. Other questions urged by appellant need not be decided.

Reversed and remanded.