W. T. HAGANS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17284.

United States Court of Appeals Fifth Circuit.

Dec. 16, 1958.

Rehearing Denied Feb. 5, 1959.

J. Sewell Elliott, Macon, Ga., M. Neil Andrews, Atlanta, Ga., for appellant.

Floyd M. Buford, Asst. U. S. Atty., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Hagans was convicted under two counts of a seven count indictment charging violation of the Internal Revenue Laws relating to liquors.[1] The jury was unable to reach a verdict as to Counts 1, 2 and 6, and found the appellant not guilty under Counts 3 and 4. He was convicted under Count 5 charging transportation of moonshine whiskey on September 23, 1957, and Count 7 charging possession of moonshine whis-

1. Count 1 charged possession of an unregistered still; Count 2, the carrying on of the business of distiller without giving bond; Count 3, the carrying on of business of distiller with intent to defraud the United States; Count 4, working at a distillery not bearing a sign; Count 5, transportation of moonshine whiskey; Count 6, sale of moonshine whiskey; Count 7, the possession of moonshine whiskey, all charges relating to September 29, 1957 except Counts 5 and 6 which related to September 23, 1957.

key on September 29, 1957. The court below entered a mistrial as to the counts upon which the jury were unable to reach an agreement.

The defense upon which appellant relied was entrapment, but he earnestly argues a half dozen errors, contending that the cumulative effect of the errors was to require reversal even though they were not deemed separately as reversible error, or were not covered by exceptions. The argument is, therefore, that, as to all except the entrapment defense, the errors were prejudicial primarily in their cumulative effect.

Appellant's brief begins the argument by quoting Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A.: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," citing Cook v. United States, 5 Cir., 1958, 254 F.2d 871, in which the foregoing quotation is repeated. It is apparent that appellant's main contention is that, in the interest of justice, we ought to reverse even though the record does not show that the requisite exceptions were taken to the challenged rulings of the court below.

■ Taking up first the questions raised by the defense of entrapment, we find no merit in appellant's argument that his motion for directed verdict at the close of all of the evidence should have been granted on the ground that the defense was established as a matter of law. Conceding that "There is a strong conflict of evidence as to how the enterprise between the officers and Hagans began," appellant claims that the testimony disclosed that, although he had been in the whiskey business and had been convicted or pled guilty to charges in the federal court some ten years before the time involved in this indictment, he had reformed and was not in the business at, or a short time before, the events of September, 1957 upon which his conviction rests.

■ It is true that appellant did testify that he was approached by the state enforcement officers and importuned to pay them protection money and that he finally yielded to their pressures and got back into the liquor business. On the other hand, Georgia Revenue Agent Harding testified categorically and at great length that appellant initiated negotiations with him by 'phone call on August 23, 1957 which resulted in a meeting between them in which appellant offered $75.00 a week for protection from molestation by Georgia law enforcement officers. He refused this offer, but told appellant that he would talk with him later. He immediately contacted a federal enforcement officer and it was decided that state and federal officers would cooperate in an effort to gather evidence upon which to convict Hagans, who was proven, without objection, to have a bad current reputation with respect to liquor law violations.[2]

According to Agent Harding's testimony, appellant called him again at his home and asked if he had been able to make the arrangements which they had discussed. This led to a personal meeting at midnight between appellant and Harding in which Federal Officer Perry participated. Appellant agreed to pay each of the officers $100.00 a week, and paid Agent Perry $200.00 in currency at that meeting. Appellant advised them that, in return for the agreed payments, they were "to steer any agents, state or federal, out of the immediate area of the

2. In addition, the officers had discovered appellant transporting and unloading 4,-000 or more pounds of sugar at his home, where a drive-in restaurant was operated, about March, 1957. Appellant was not able to give a satisfactory explanation of the possession of such a large amount of sugar, stating that he was selling it chiefly in 100 pound bags, but finally refusing to give the names of persons to whom he had made such sales. This evidence was admissible as a circumstance to justify suspicion on the part of the officials that the sugar was for use in the manufacture of whiskey. The instruction requested by appellant that "the possession of sugar is not a criminal offense" was properly refused under the circumstances revealed by the evidence before us.

liquor still, that his still was set up in." Appellant told them of the location of his still and told them further that he wanted them to find some sugar for him and that, if they came across any liquor stashes, he would pay them $2.00 a gallon for the liquor.

Both Perry and Harding testified at length and in full detail to the negotiations and were subjected to rigorous cross-examination. Their testimony that it was appellant alone who initiated and pressed the negotiations was evidently accepted by the jury on the question of entrapment, and we think the jury was amply justified in believing the agents in preference to appellant and his witnesses.

■ Appellant makes an extensive argument that the charge of the trial judge on the issue of entrapment was prejudicially inadequate, relying chiefly on the opinion of Judge Learned Hand in United States v. Sherman, 2 Cir., 1952, 200 F.2d 880, and the decision of the Supreme Court in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. Laying aside for the moment the fact that appellant did not except to the charge,[3] we find it to be unexception-

able.[4] Most of the charge was devoted to the question of entrapment and, viewed as a whole, it was exceedingly liberal to the appellant, quoting almost *totidem verbis* the charges requested by him. We think that the point is wholly without merit.

■ Considering now the most stressed alleged errors whose "accumulated effect" appellant claims deprived him of a fair trial, we take up first the argument that the actions of the trial court after submission of the case to the jury tended to coerce the jury to reach a verdict. About three and one-half hours after the jury had received the case the court called its members back into the courtroom, asking if the jury was troubled by any question of law. The foreman responded that the law was clear—"It is just a matter of deciding which to believe." The court then instructed the jury in general terms about the duty of jurors to discuss the case with each other and to be persuaded by reason,[5] and at its conclusion the parties were asked if they excepted to any portion of the charge. Appellant excepted in terms too general to conform to the requirement of Rule 30 of Federal

---

3. At its conclusion appellant's attorney stated: "I believe the charge to be unexceptionable unless higher authority denies. I don't." The trial judge responded: "I am sure the higher authority would not find anything wrong with it in the absence of any exception from counsel."

   Under the holdings of this Court error based upon such contentions under the facts here before us would be considered only under very exceptional circumstances, Fowler v. United States, 5 Cir., 1957, 242 F.2d 860, and Contreras v. United States, 5 Cir., 1954, 213 F.2d 96.

4. Conforming to the tests of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and in line with the decisions of this Court. E.G., Kott v. United States, 5 Cir., 1947, 163 F.2d 984, certiorari denied 333 U.S. 837, 68 S.Ct. 609, 92 L.Ed. 1122; Jindra v. United States, 5 Cir., 1934, 69 F.2d 429, certiorari denied 292 U.S. 651, 54 S.Ct. 869, 78 L.Ed. 1501; and cf. Hamilton v.

United States, 5 Cir., 1955, 221 F.2d 611.

5. The substance of this charge is well summarized in this excerpt: "It is the duty of every juror to consult with every other juror and reach a mutual understanding in the case. The court does not mean to say that a juror is to give up an abiding conviction in the matter, but it is your duty to reconcile such differences, if any exist, and if it is possible to do so. * * *

   "I charge you further, gentlemen, that the court has expressed no opinion in the case, and expresses no opinion whatsoever as to what your verdict should be. In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellow jurors, yet you must examine the question submitted with candor and with a proper regard and deference to the opinion of each other * * *."

Rules of Criminal Procedure.[6] The court advised counsel that the charge had been read "practically verbatim" from one United States Supreme Court report and from two Georgia Supreme Court cases. The instruction was, in our opinion, a proper exercise of judicial discretion and was in no sense coercive, but was in keeping with good practice.[7]

The charge did not apparently produce results, and the judge called the jury back into the courtroom at eleven P.M., some five hours later. Upon being advised that the jury had not reached a verdict but was making progress, the judge asked the marshal to make arrangements for their accommodation for the night, suggesting that they resume negotiations the following morning. No exception was taken to this action by the court and no argument is predicated directly upon it.

The following morning the court received a communication from the jury containing two questions which it discussed with counsel out of the presence of the jury. By agreement of the parties certain testimony was read by the court reporter to the jury referring to the date when the large amount of sugar was unloaded on appellant's premises. Appellant entered no objection to what happened except that he requested the judge to instruct the jury that the possession of sugar itself was not a criminal offense. The court declined to do so and, as stated above, we do not think that its action was erroneous. Cf. Zavala v. United States, 5 Cir., 1958, 256 F. 2d 164, and Samish v. United States, 9 Cir., 1955, 223 F.2d 358, 366.

The second question asked by the jury was whether it was necessary to reach a decision on all seven counts, to which the court responded that the jury "may return a verdict on any number of counts or any single count, one or all, as to which you are able to reach an agreement, and your verdict would be accepted as to those counts or that count upon which you are able to agree. And a mistrial will be declared only with respect to the remaining count or counts." Appellant advised that no exception was taken to that action of the court, counsel stating that he thought the court had the discretion so to act. Thereupon the jury brought in a verdict as indicated above. We find no error on the part of the court below in connection with its handling of the jury.

■■ Appellant argues for a reversal because of what he refers to as "prejudicial testimony" of the United States Attorney arising from the following facts. While State Revenue Agent Harding was on the stand appellant brought out that, on one occasion, Harding was wearing a microphone (sometimes referred to as "the bug") and tape recording machine, which presumably had taken down some of the conversation between him and appellant. His attorney asked, in the presence of the jury, that the record and the entire device be brought into court and set up so that it could be played for the benefit of court and jury. The government attorney responded that he had not called for the mechanism to be produced, but would go out in the hall and see if any of the officers had it.[8] The quoted statement was

6. "I wish to respectfully except to Your Honor's supplementary charge, or whatever Your Honor designates it, upon the ground that taken as a whole it has a tendency, or it is calculated to have a tendency, to coerce a jury into reaching a verdict and I except to it because I will be harmed by it should it be a verdict of guilty."

7. Cf. Congress & Empire Spring Co. v. Edgar, 99 U.S. 645, 25 L.Ed. 487; Patterson v. United States, 5 Cir., 1951, 192 F.2d 631; and Weathers v. United States, 5 Cir., 1942, 126 F.2d 118, certiorari denied 316 U.S. 681, 62 S.Ct. 1267, 86 L.Ed. 1754.

8. "Mr. Buford: I didn't call for the bug to be produced down here, Judge. I'll go out herein the hall and see if they have it.
* * * * *
"Excuse me, Judge, I checked on the bug for Your Honor out there with the federal agent, the agent in charge, Mr. Kelley. He says that it was sent into his office and, of course, they investigated

interrupted by an objection by appellant based upon the charge that the United States Attorney was testifying when he was not on the witness stand, followed by a request for a mistrial on the ground that appellant was entitled to a favorable inference from the Government's failure to produce the instrument, which the Government attorney should not be permitted to destroy by his statement. The whole episode was concluded by the court's statement: "Very well. You insist on your motion and I overrule it. But I will instruct the jury to pay no attention to why the apparatus is not here. That is, as to any showing made thus far. Now proceed with your questions."

It is difficult to see how the Government's attorney could have responded to appellant's request in any other way than he did. Appellant had requested that he go out into the hall and bring the contrivance back and set it in operation. That was in the presence of the jury and, responding to it, the attorney made a fair statement of why it was not available. An invited response to a question in open court if fairly given is, like provoked and invited argument, not improper. Schmidt v. United States, 8 Cir., 1956, 237 F.2d 542, 543.

The situation here presented is not at all like that with which we dealt in Nalls v. United States, 5 Cir., 1957, 240 F.2d 707. There, the United States Attorney had made a voluntary and unnecessary statement in the presence of the jury which was clearly prejudicial. The trial court refused to instruct the jury to disregard it. We held that, in a case such as that where the evidence was not fully developed and was unsatisfactory, the unprovoked statement of the United States Attorney was reversible error. We are not dealing with any such situation here.

We have considered these rulings, along with several others made by the trial court and earnestly urged by appellant as error. We do not find that, in a case such as the one before the Court where the commission of the acts charged against the accused is admitted and the defense is one of entrapment, the errors, even assuming that they were such, were sufficient to require reversal. We think that the record reflects that the appellant was given a fair trial and the jury was justified, by the overwhelming evidence, in rejecting his defense of entrapment. The judgment is, therefore,

Affirmed.

it to see if it could be played where it could be understood, and he said since none of the conversation could be understood that they didn't bring the machine with them, or didn't bring the records;

said they have listened to it and it is just not understandable and that is the reason it has not been produced into Court. Of course,—"