James Terrell KNIGHT, Roy Lee Barrett, Jackie Hamilton Gainey, Cleveland Johns and William Prentis Tucker, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18966.

United States Court of Appeals Fifth Circuit.

Jan. 12, 1962.

Rehearing Denied March 15, 1962.

Joseph H. Davis, J. Sewell Elliott, Macon, Ga., for appellants.

William A. Davis, Jr., Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

James Terrell Knight, Amos Barlow, Roy Lee Barrett, Jim Colson, Jackie Hamilton Gainey, Cleveland Johns, Dan Stinson and William Prentis Tucker were indicted for conspiring, in violation of 18 U.S.C. § 371, to violate various sections of the Internal Revenue Code,[1] to possess and control stills for the production of distilled spirits, to ferment mash for distillation, to conceal and remove distilled spirits, and otherwise to violate the Code sections dealing with the unlawful handling of distilled liquors and the means by which they were manufactured and distributed. Amos Barlow plead guilty, and the court below eliminated Dan Stinson after he had been convicted

---

1. §§ 5179(a), 5601(a), 5176, 5602, 5205(a) (2), 5604(a), 7206(4), 5691(a) and 5222 of Title 26 U.S.C.

by the jury. The remaining defendants were found guilty by the jury and sentenced to terms of imprisonment. Colson did not appeal, and before us are Knight, Johns, Barrett, Gainey and Tucker who appeal from the judgments sentencing them after conviction under the jury's verdict.

The indictment charges that twelve other named persons were engaged in the same conspiracy along with divers others unknown to the grand jury. These twelve were not indicted by the grand jury. The Government used four of these, Eddie B. Bruns, Johnny Coley, Jr., Thomas W. Hodge, and Monroe Mims, as witnesses, and the case depends largely upon their testimony along with that of William W. Williams, a government employee.

The appellants base their appeal upon various errors which they claim the court below committed in the trial. Chief among these is that the large number of violations of the revenue laws disclosed by the evidence were not shown to be the result of a single conspiracy; and that the violations charged against the appellants were not related to or connected with the conspiracy established by the government; and that venue jurisdiction in the Macon Division of the Middle District of Georgia was not shown as to the charges against the several appellants. The other errors charged by the appellants, which may be referred to as minor errors, will be taken up after discussion of the main point.

■ This being a charge of conspiracy in violation of 18 U.S.C. § 371, supra, it is necessary that each of the accused be connected with the conspiracy by proof beyond a reasonable doubt. Venue jurisdiction is an important element of that proof. Concerning it, the Supreme Court recently stated in United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873:

"The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed. ('In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed * * *' U. S. Const., Amend. VI.) This principle is reflected in numerous statutory enactments, including Rule 18, Fed. Rules Crim.Proc., which provides that except as otherwise permitted, 'the prosecution shall be had in a district in which the offense was committed * * *' In ascertaining this locality we are mindful that questions of venue 'raise deep issues of public policy in the light of which legislation must be construed.' * * The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place. Provided its language permits, the Act in question should be given that construction which will respect such considerations."

■ A careful reading of this long and muddled record convinces us that there was sufficient evidence to connect appellants Knight and Johns with the conspiracy which was established and with overt acts charged in the indictment and committed in Houston County, Georgia, which is in the Macon Division, cf. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, and Ladner v. United States, 5 Cir., 1948, 168 F.2d 771; but that the evidence was not sufficient to support the judgments appealed from as to appellants Barrett, Gainey and Tucker. No important question of law is involved, and nothing will be gained by a detailed recital of the facts as to them, inasmuch as such a course would be of no benefit in connection with any other case involving different facts.

By the witness Hodge it was established that appellant Knight, who operated a truck stop in Houston County, came to Hodge at or near his residence in Wilcox County, Georgia, seeking to enter into partnership with Hodge in the manufac-

ture, handling and sale of untax-paid liquor. Hodge was the owner of several stills which were already in operation, and Knight wanted to furnish an outlet for the moonshine whiskey Hodge was manufacturing and to interest him in setting up other stills, all of which Hodge and Knight were to operate on a fifty-fifty basis. Knight was to put up some money, to furnish some additional equipment for the installation of additional stills, and to provide transportation for the illicit whiskey. Hodge was eager to enter into the agreement, because he did not have an adequate market for the whiskey he was already producing.

These negotiations transpired outside the Macon Division, but a number of overt acts charged in the indictment were established to have taken place at or near Knight's truck stop in the Macon Division in which appellants Knight and Johns, along with a number of the other individuals named as participants by the indictment but not included in it as defendants, participated, which acts were bound up with the conspiracy entered into between Knight and Hodge. These included the hauling of butane gas cylinders, along with other component parts of illicit distilleries, the furnishing of vehicles at Knight's truck stop for use in transporting liquor, the hauling of whiskey to the Knight Truck Stop, operations centering around the truck stop which were carried on in an effort to recover some whiskey stolen from a still in Wilcox County, the storing of materials for manufacture of stills at the home of appellant Colson in Houston County, and operation of a truck from Knight's truck stop which was backtracked to a whiskey still in the woods about two miles away. In several of these activities appellants Knight and Johns were active participants.

The Government made an extended effort to connect appellant Tucker with the conspiracy. Hodge first testified that

Tucker accompanied Knight to Hodge's place when the conspiracy was first made, which date Hodge fixed rather definitely as February 15, 1960. Later, Hodge testified that he had seen Tucker only once and that was when Tucker was engaged in Hodge's shed welding on a liquor still for him and appellant Knight. He placed this as somewhere about the latter part of February. Another witness also stated that he saw Tucker welding on a still under Hodge's shed. The ultimate destination of those stills, whether Tucker knew about the prospective owners, as well as all of the other testimony concerning Tucker, was of a vague and unconvincing nature. Nor was any witness able to identify Tucker at the defendants' table during the trial.

The entire fabric of testimony against Tucker is brought in question by the testimony of a witness from Detroit, Michigan, who testified that he had employed Tucker to drive a truck for him in the Detroit territory and that Tucker worked there with him from the middle of January until about March 10, 1960, during which time he saw Tucker frequently. The witness placed in evidence about twenty cancelled checks and two invoices all bearing the signature of Tucker and tending to establish his presence in Detroit or at nearby points during the crucial dates around the middle and latter part of February. The checks were issued to Tucker and bore Tucker's endorsement and were cashed or handled through banks in the Detroit area during that period. This evidence tended to confirm Ramsey's testimony and to establish Tucker's presence there at the time Hodge was placing him at Hodge's home in Georgia.[2]

On the whole, although there was evidence tending to sustain the Government's case, including two checks, we think that the evidence, particularly as to Tucker's participation in the conspiracy, was too weak to support his conviction.

2. Checks issued to Tucker were cleared through banks in or near Detroit on February 4, February 5, February 11, February 15, February 17 (two), February 23 (2), and February 25. An invoice on which Tucker had signed his name as receiving goods on February 16 was also introduced.

We think the same with respect to the testimony against appellants Barrett and Gainey,[3] but, as stated, no useful purpose will be served by detailing it here.

We will advert briefly to the objections entered by appellants to various acts of the prosecuting attorney during the trial. During his argument, the attorney picked up what his opponent stated was the Government's file in the case, with the statement: "We have a whole catalog of evidence here." Upon objection by attorneys for the appellants, the court stated: "Yes, the catalog has not been introduced as such." The Government's attorney responded "All right, sir. I stand corrected." Thereupon the court stated: "I take it that your reference is simply to the testimony from the stand."

Again, the prosecutor mentioned in his closing argument that he had charged in his opening statement that more than $143,000 in tax money had been evaded in the operation of the conspiracy. He followed with: "Now those figures, which were compiled by the Internal Revenue Service—" when objection was made by appellants' counsel: "If Your Honor please, I think perhaps we are going a little too far in referring to those figures * * * I hate to interrupt counsel but I feel I must do so." The court responded: "Well, of course there is no actual evidence as to how they were compiled. If you wish just to infer from the evidence argue to the jury that you infer. I think that would be proper, but there is no specific evidence as to who made the compilation."

Objection is also made that the court below, in its charge, merely defined what under the law an accomplice was without the explanation that the judge was not inferring that anyone was an accomplice. When objection to this was made, the jury was brought back, and the court made a full explanation that its reference had been made only to "alleged accomplices," assuring the jury that it did not intimate any opinion, one way or the other, as to whether any person in the case was guilty, either the witnesses or the defendants.

Appellants point out a number of instances when the prosecuting attorney persisted in asking questions which were leading and otherwise objectionable, taking the position that the cumulative effect of all of these was to deny appellants a fair trial. There is no doubt that this objection is factually supported by the record. Throughout the trial leading questions were asked, and the court cautioned government counsel against the practice more than once; but, each time, the court sustained the objection and corrected as far as it could, whatever prejudice might have resulted.

These objections, on the whole, deal with the minutiae of the trial, and the court handled each episode as it arose in such a way as not, in our opinion, to prejudice the rights of the appellants in the situation with which we are faced here. In a close case where the evidence is not strong, this cumulation of errors might call for reversal. But the guilt of Knight and Johns is so clear that we are not constrained to disturb the judgment against them. Cf. Hagans v. United States, 5 Cir., 1959, 261 F.2d 924, 928–929, and Fogarty v. United States, 5 Cir., 1959, 263 F.2d 201, 204 et seq.

The judgment of the court below as to appellants James Terrell Knight and Cleveland Johns is affirmed; as to appellants Roy Lee Barrett, James Hamilton Gainey and Prentis Tucker it is reversed and the case is remanded for a new trial.

TUTTLE, Chief Judge (concurring in part and dissenting in part).

I agree with that part of the opinion that affirms the judgment of the trial court as to Knight and Johns and also as to that part that reverses as to appellants Barrett and Gainey. As to the judgment of conviction of William Pren-

---

3. Williams testified that cases involving substantive crimes were pending against Barrett, Colson and Gainey.

tis Tucker I respectfully dissent. Two witnesses, including Hodge, one of the primary participants in the agreement to construct and operate the stills, positively testified that Tucker participated in the building of the stills in a shed on Hodge's property. I think the fact that there was ambiguous testimony which at most might have authorized the jury to find an alibi for Tucker does not warrant our holding that a jury did not have before it sufficient evidence from which it could determine beyond a reasonable doubt that Tucker participated in the conspiracy.

I would, therefore, affirm the judgment of conviction as to Tucker as well as Knight and Johns.