446 F.2d 309
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leon HAYES, Defendant-Appellant.
No. 71-1519 Summary Calendar.*
*(1) Rule 18, 5 Cir.; See Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 July 13, 1971.
 
 Robert E. McDonald, Jr., Mobile, Ala., for defendant-appellant.
 Charles S. White-Spunner, Jr., U.S. Atty., Irwin W. Coleman, Jr., Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.
 Before COLEMAN, SIMPSON, and MORGAN, Circuit Judges.
 COLEMAN, Circuit Judge:
 On November 22, 1926, the Supreme Court decided Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, in which Mr. Justice Stone, delivering the opinion of the Court, wrote:
 
 
 1
 'The only errors assigned which are pressed upon us concern proceedings had upon the recall of the jury after its retirement. The jury having failed to agree after some hours of deliberation, the trial judge inquired how it was divided numerically, and was informed by the foreman that it stood nine to three, without his indicating which number favored a conviction.'
 
 
 2
 'We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.
 
 
 3
 'The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this Court from correcting the error. Cf. Wiborg v. United States, 163 U.S. 632, 658, et seq. (16 S.Ct. 1127, 1197, 41 L.Ed. 289); Clyatt v. United States, 197 U.S. 207, 220, et seq. (25 S.Ct. 429, 49 L.Ed. 726); Crawford v. United States, 212 U.S. 183, 194 (29 S.Ct. 260, 53 L.Ed. 465); Weems v. United States, 217 U.S. 349, 362 (30 S.Ct. 544, 54 L.Ed. 793). This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done.'
 
 
 4
 In reaching this conclusion, the Supreme Court noted that the Fifth Circuit had held to the contrary in Bernal v. United States, 5 Cir., 241 F. 339 (1917).
 
 
 5
 Since the decision in Brasfield, supra, this Court has considered this problem on at least three occasions.
 
 
 6
 In Cook v. United States, 5 Cir., 254 F.2d 871 (1958), a jury had been in disagreement as to its verdict on a rape case (18 U.S.C. 2031). In that case, after approximately five hours of deliberation, the jury reported that it believed itself to be hopelessly deadlocked. At 10 o'clock the next morning the jury reported that it had deliberated until eleven o'clock the previous night and for another hour the following morning 'and we believe we are closer than we have been at any time'. The Court then asked to be told the numerical division of the jury (not as to result) and the jury reported that it stood seven to five at the last count, the night before. The Judge then addressed the jury, stating, among other things, '(I) want you to send home and get your clothes. I know you need shirts and I know you need razors and I want you to send home and get them. * * * I am going home Friday afternoon. If you do not reach a verdict by that time you can call me on Saturday * * *, if you reach a verdict on Saturday. I will be back here Sunday afternoon. I am not trying to threaten you. I am giving you exactly what the Court is going to do. I want you to get your clothes now. I want you to get your shirts, get your razors and whatever you need from home. The Marshal will get them for you. Now, today's over. You can go to your room, and resume your deliberations'.
 
 
 7
 Upon exception by counsel for the defendant, the Court further instructed the jury that he had not intended to intimidate the jury in any way and that when he mentioned the shirts it was for their comfort.
 
 
 8
 This Court (Judges Rives, Brown and Wisdom) held:
 
 
 9
 'The mere asking of the question requiring an answer as to the standing of the jury, even though no inquiry is made nor answer given as to whether the majority is for acquittal or conviction, is error per se. In this case that error was aggravated by the suggestion that the jury might be held together through Thursday, Friday, Saturday, and Sunday.'
 
 
 10
 That same day this Court decided Butler v. United States, 5 Cir., 254 F.2d 875, arising from the same District Court, in which the same questions had been propounded as to the numerical division of a jury. The conviction was affirmed under Rule 52(a) of the Federal Rules of Criminal Procedure because the error had not affected substantial rights, the point being that the jury had only been out for about forty-five minutes, was preparing to go to lunch, and there was no statement that the jury was hopelessly deadlocked, although there was a remark that it was 'about as far apart as we were when we started'.
 
 
 11
 The same question arose in Beale v. United States, 5 Cir., 1959, 263 F.2d 215. In that case, the jury had been deliberating for only thirty-two minutes. Lunch time arrived. The Judge made the inquiry, noting 'it's about time for you to eat; I want to check before our noon recess'. The jury returned from lunch at 2 o'clock and returned a verdict of guilty fifteen minutes later. We held that there was no infraction of Brasfield because 'the trial judge was actuated by solicitude for the jury, to arrange a suitable luncheon hour, and not by a desire to pry into or influence their deliberation. This and the short time the jury deliberated over its verdict distinguish the case from Brasfield and from most of the decisions holding that the inquiry was reversible error'.
 
 
 12
 In the appeal now before us, Leon Hayes was convicted of bank robbery and sentenced to imprisonment for ten years. The gravamen of the offense charged was that while Hayes did not participate in the actual robbery, he, by arrangement with the actual robbers, went to the Bank to see if the vault was open and thereafter notified the others that it was, whereupon the robbery was accomplished by the other parties.
 
 
 13
 Hayes was tried jointly with a co-defendant named Jack Prentiss. The trial lasted three days. The jury began its deliberations at 9:47 a.m., September 17, 1970. There were appropriate recesses for meals and there was a request for additional instructions. At 11:27 a.m., on the second day of deliberations, the jury reported its inability to reach a verdict. This resulted in the giving of the well known, and in some quarters discredited,[1] Allen charge. At 5:03 p.m. the jury returned a verdict of guilty as to Jack Prentiss, which was sealed and not divulged.
 
 
 14
 At this point, the trial court asked the jury how it stood numerically as to the other defendant.
 
 The dialogue ran as follows:
 
 15
 'The Court: Now let me ask you this-- now I want to get down with reference to the other defendant. How badly are you split? What I am speaking of is, can you give me numbers? I am just asking for numbers.
 
 
 16
 'The Foreman: Eleven to one.
 
 
 17
 'The Court: Eleven to one?
 
 
 18
 'The Foreman: Yes, sir.
 
 
 19
 'The Court: What is your judgment as to whether or not you will be able to reconcile your viewpoints. I will ask the foreman first.
 
 
 20
 'The Foreman: Your Honor, I do not believe we will be able to reconcile it.
 
 
 21
 'The Court: May I ask you this, how long have you been eleven to one?
 
 
 22
 'The Foreman: I would say for two hours-- Well no, one hour.
 
 
 23
 'The Court: When you first came in, this morning, how badly were you split with reference to this defendant at that time?
 
 
 24
 'The Foreman: Five to seven.
 
 
 25
 'The Court: Five to seven?
 
 
 26
 'The Foreman: Yes, Sir.
 
 
 27
 'The Court: Well, it took three days to try the case and you have had the case all day today, and you got it about ten o'clock yesterday morning. Do you think that with an overnight rest and coming back and giving it some further deliberation that you might be able to reach a verdict?
 
 
 28
 'The Foreman: I cannot answer that. I wish I could but I cannot.
 
 
 29
 'The Court: Let me ask for a show of hands of those that think that you would have some expectation of being able to reconcile your view if you come back tomorrow. Just raise your hand.
 
 
 30
 'The Clerk: Three, Mr. Reporter.'
 
 
 31
 The Court instructed the jury to return the next morning for further consideration of its verdict, but, for reasons not stated to the jury, directed it to deliberate for another hour before going home. At 6:30 p.m., the jury recessed for the night without further appearance before the Court.
 
 
 32
 Deliberations were resumed at 9 o'clock on the morning of the third day. Some progress was reported at 11:53 a.m. and there was a recess for lunch.
 
 
 33
 At 1:35 p.m., the jury returned a verdict, finding Leon Hayes to be guilty as charged.
 
 
 34
 The Government argues that since the jury deliberated for an hour after the inquiry was made, recessed for the night, and continued to deliberate until 1:15 p.m. the next day, the inquiry could not have been coercive and obviously did not affect the outcome.
 
 
 35
 On the motion for new trial the District Judge summarized the facts as hereinabove stated and further stated that the inquiry had been made as to the division of the jury 'in an effort to determine the most appropriate time for the jury to recess for the night'. It concluded, 'the inquiry was not coercive and the inquiry was harmless'. It is to be noted, however, that the jury was not told the motive for the inquiry.
 
 
 36
 Although it is to be noted that when the inquiry was made the jury had been deliberating for two days, and an Allen charge had been given, we do not consider that our decision turns on the presence or absence of coerciveness.
 
 
 37
 While the Supreme Court alluded in Brasfield to 'an improper influence upon the jury' resulting from such an inquiry, it made three other comments which we believe to be completely controlling in the facts now before us.
 
 
 38
 First, the Supreme Court said, 'we deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal'.
 
 
 39
 Secondly, the Supreme Court said, 'such a practice, which is never useful and is generally harmful, is not to be sanctioned'.
 
 
 40
 Thirdly, the Supreme Court considered such an inquiry to be plain error because it affected 'the proper relations of the court to the jury'.
 
 
 41
 The judgment of the District Court is reversed and the cause remanded for a new trial.
 
 
 42
 Reversed and remanded.
 
 
 
 [1]
 The Allen charge may no longer be used in the Third Circuit, United States v. Fioravanti, 3 Cir., 1969, 412 F.2d 407
 The Seventh Circuit strongly discourages the use of the charge, United States v. Knaack, 7 Cir., 1969, 409 F.2d 418, cert. den. 396 U.S. 831, 90 S.Ct. 87, 24 L.Ed.2d 83.
 The Tenth Circuit allows the use of the charge only in the main body of the jury charges and cannot be used after a jury reports that it has difficulty reaching a verdict, United States v. Wynn, 10 Cir., 1969, 415 F.2d 135.
 The use of the charge is approved in the Fifth Circuit, although not unanimously, Thaggard v. United States, 5 Cir., 1965, 354 F.2d 735, cert. den. 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301.